IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PASCUAL ECOQUIJ-TZEP, and all others similarly situated under 29 USC 216(b), | § § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:16-cv-625-BN |
| LE ARLINGTON, INC. d/b/a MW HAWAIIAN GRILL also d/b/a MW'S HAWAIIAN GRILL also d/b/a LITTLE TOKYO and f/k/a SHUN FAR EL PASO, INC., GRAND FAST FOOD INC d/b/a FAMOUS CAJUN GRILL and also d/b/a FAMOUS WOK, SHIZHONG ZHANG, YING HUI WANG, and KONG SHEN WANG, | § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Defendants Le Arlington, Inc. d/b/a/ MW Hawaiian Grill also d/b/a MW's Hawaiian Grill also d/b/a Little Tokyo and f/k/a Shun Far El Paso, Inc. ("Le Arlington"), Grand Fast Food, Inc. d/b/a Famous Cajun Grill and also d/b/a Famous Wok ("Grand Fast Food"), Shizhong Zhang, Ying Hui Wang, and Kong Shen Wang (collectively, "Defendants") move to dismiss Plaintiff Pascual Ecoquij-Tzep's Third Amended Complaint Under 29 U.S.C. §§ 201- 216 Overtime and Minimum Wage Violations [Dkt. No. 84]. *See* Dkt. No. 93 ("Third MTD").

Ecoquij-Tzep, on behalf of himself and other similarly situated, filed a response, *see* Dkt. No. 116, and Defendants filed a reply, *see* Dkt. No. 120.

For the following reasons, the Court DENIES Defendants' Amended Third Motion to Dismiss [Dkt. No. 93].

## Background

Ecoquij-Tzep sued Hawaiian Grill, his former employer, alleging that it failed to pay him the minimum wage or overtime, in violation of the Fair Labor Standards Act, 28 U.S.C. § 206, *et seq.* (the "FLSA"). Hawaiian Grill filed a motion to dismiss, *see* Dkt. No. 6, which the Court granted in part and denied in part, and the Court gave Ecoquij-Tzep leave to file an amended complaint as to his individual coverage and collective action allegations, *see* Dkt. No. 10

In his First Amended Complaint, Ecoquij-Tzep again sued Hawaiian Grill for violations of the FLSA's minimum wage and overtime provisions. *See* Dkt. No. 11. Hawaiian Grill filed another motion to dismiss, *see* Dkt. No. 13, which the Court granted in part and denied in part, *see* Dkt. No. 24. The Court dismissed with prejudice Ecoquij-Tzep's FLSA claims based on individual coverage but allowed Ecoquij-Tzep to proceed on his FLSA claims based on enterprise coverage, which had not been raised in the motion to dismiss. The Court also denied the motion to strike the collective action allegations. *See id.*

Ecoquij-Tzep sought and was granted leave to file a Second Amended Complaint. *See* Dkt. Nos. 32 & 47. In his Second Amended Complaint, Ecoquij-Tzep changed the name of Hawaiian Grill to Le Arlington, Inc. d/b/a MW Hawaiian Grill also d/b/a MW's Hawaiian Grill also d/b/a Little Tokyo and f/k/a Shun Far El Paso, Inc. *See* Dkt. No. 49. Ecoquij-Tzep also added four additional defendants – Grand Fast Foods, Inc., Shizhong

Zhang, Ying Hui Wang, and Kong Shen Wang – and a joint enterprise allegation. *See* Dkt. No. 49.

Ecoquij-Tzep alleged that he worked as a server and cashier for a Hawaiian Grill restaurant and a Famous Cajun restaurant from approximately December 3, 2014 to January 25, 2016; that he was paid in lump sum payments resulting in an average hourly rate of $6.00 per hour; and that, although he worked an average of seventy hours per week, he was not paid the time-and-a-half rate for time that he worked in excess of 40 hours, as required by the FLSA. Ecoquij-Tzep sues Le Arlington and Grand Fast Food as FLSA joint employers and sues Shizhong Zhang, Ying Hui Wang, and Kong Shen Wang as corporate officers, owners, or managers of one or more of the corporate defendants who were responsible for paying Ecoquij-Tzep's wages and controlling Ecoquij-Tzep's work and schedule during the relevant time period. *See id.*

Ecoquij-Tzep sues both individually and on behalf of other similarly-situated hourly employees of Defendant. *See id.*

Defendants moved to dismiss the Second Amended Complaint. *See* Dkt. No. 55. Defendants asserted that Ecoquij-Tzep's enterprise coverage claims are factually insufficient to state a claim, that the joint enterprise claim is both factually insufficient and conclusory, and that the joint employer claim is conclusory. Defendants again attacked Ecoquij-Tzep's individual coverage, overtime, and minimum wage claims.

The Court granted in part and denied in part Defendants' motion to dismiss Ecoquij-Tzep's Second Amended Complaint, determining that "Ecoquij-Tzep has alleged the basic elements of enterprise coverage but not the necessary factual

support"; that "Ecoquij-Tzep's allegations regarding the commerce and handling requirements are merely conclusory and do not state any facts from which it can be gleaned that the enterprise and its employees are involved in commerce as required to satisfy the FLSA's coverage element"; and that, while "Ecoquij-Tzep argues that the allegations that he and other similarly situated employees include cashiers, servers, and cooks are factually sufficient because the Court can reasonably infer that cashiers, servers, and cooks by their very nature must use goods and materials like cash registers, credit card machines, cooking utensils, food, spices, beverages, and cooking equipment that have traveled through interstate commerce," "Ecoquij-Tzep's complaint contains no allegations concerning the goods and materials that he and the other cashiers, servers, and cooks used." Dkt. No. 72 at 7-8.

The Court explained that

> Ecoquij-Tzep's Second Amended Complaint "leaves the court asking what goods or materials did the employees handle or what instrumentalities of interstate commerce did they use. The court concludes it is not unreasonable to require the plaintiffs to answer these questions." *Centeno v. Facilities Consulting Group, Inc.*, No. 3:14-cv-3696-G, 2015 WL 247735, at *11 (N.D. Tex. Jan. 20, 2015).
>
> Even viewing the factual allegations in the light most favorable to Ecoquij-Tzep, the Court cannot reasonably be expected to read these additional factual allegations into the complaint. Ecoquij-Tzep should understand the nature of his employer's business activities and be able to include some factual allegations indicating that his employer meets the commerce standard. *See Centeno*, 2015 WL 247735, at * 11. The court will not infer that Ecoquij-Tzep and other similarly situated employees handled goods and materials that traveled through interstate commerce, and, without those allegations, Ecoquij-Tzep fails to sufficiently plead enterprise coverage.

*Id.* at 8. Because that was "the third motion to dismiss in this case but the first motion

to properly raise a challenge to Ecoquij-Tzep's pleaded enterprise coverage allegations," the Court "grant[ed] Ecoquij-Tzep one last chance to replead these allegations or face dismissal of all of his FLSA claims." *Id.*

As to joint enterprise, the Court noted that "Ecoquij-Tzep alleges that Le Arlington and Grand Fast Foods (the 'corporate defendants') are part of a joint enterprise and that Shizhong Zhang, Ying Hui Wang, and Kong Shen Wang (the 'individual defendants') are officers, directors, or managers of the business entities comprising the joint enterprise" and "predicates this claim on the fact that he worked for both a Hawaiian Grill restaurant and a Famous Cajun Grill restaurant and that the two restaurants shared management personnel." *Id.* at 9. The Court agreed with Defendants "that Ecoquij-Tzep's joint enterprise allegations are conclusory and factually insufficient" where it "is not enough" that "Ecoquij-Tzep alleges that Le Arlington, Grand Fast Food, and at least one other entity, Megatrend Food Management, Inc., are part of a joint enterprise as defined by 29 U.S.C. § 203(r) because 'the related activities between the various businesses, performed through unified operation and/or common control, are being done for a common business purpose[,]' Dkt. No. 49 at 5"; "that the related activities include the operation of numerous restaurants under the MW Hawaiian Grill, Little Tokyo, and Famous Cajun Grill brands throughout the state of Texas"; and "that, according to the Texas Secretary of State, Ying Hui Wang and Kong Sheng Wang appear as officers, directors, or managers for both of the corporate defendants and Ying Hui Wang is the president of Megatrend Food Management, Inc." *Id.* at 9-10.

The Court explained that, "[a]lthough Ecoquij-Tzep's alleges that he worked for two restaurants – Hawaiian Grill and Famous Cajun Grill – he does not allege any other facts showing how the two restaurants' activities are related other than that they 'shared management personnel'" and that "[t]he Court cannot, without more, reasonably infer that the activities of the two alleged employer restaurants were the same or similar." *Id.* at 10-11.

The Court noted that "Ecoquij-Tzep also alleges that the two restaurants are under unified operation or common control because Ying Hui Wang and Kong Shen Wang are officers, directors, or managers of Le Arlington and Grand Fast Food and that Yin Hui Wang is the president of the other business entity alleged involved in the joint enterprise" but that, "[i]n assessing whether the requisite 'common control' is present, the determinative question is whether a common entity has the power to control the related business operations" and that "[t]he test of common control is not ownership but rather whether there is a common control center with the ultimate power to make binding policy decisions for all units of the enterprise." *Id.* at 11. The Court determined that "Ecoquij-Tzep's allegations that the corporate defendants have common corporate officers is not sufficient to show that the individual defendants exercised common control over the corporate defendants" or "that the corporate defendants were under unified operation," which is defined as 'combining, uniting, or organizing the performance of related activities so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment.'" *Id.* As the Court explained, "[t]he common business purpose

requires more than a common goal to make a profit," and "Ecoquij-Tzep alleges no facts to show that the activities of the corporate defendants were unified to accomplish a common business purpose." *Id.* at 12.

The Court determined that "Ecoquij-Tzep's joint enterprise allegations mention each of the requisite elements: related activities, unified operation/common ownership, and common business purpose. But those allegations lack sufficient factual allegations to sufficiently plead joint enterprise coverage." *Id.* Still, "[b]ecause [that was] the first motion to dismiss to address these allegations, the Court [afforded] Ecoquij-Tzep one chance to replead the joint enterprise allegations." *Id.*

As for Ecoquij-Tzep's allegations that "Le Arlington and Grand Fast Foods were his joint FLSA employers and that the individual defendants were his employers," the Court explained that it "addressed Defendants' employer status in its June 21, 2017 Memorandum Opinion and Order [and] determined that Ecoquij-Tzep sufficiently alleged in his Second Amended Complaint that Defendants were his employers" and that, "[f]or the same reasons, the Court will deny the motion to dismiss on this ground." *Id.*

And the Court determined that Ecoquij-Tzep otherwise sufficiently alleges FLSA overtime violations and FLSA minimum wage violations. *See id.* at 13-14.

Accordingly, the Court dismissed Ecoquij-Tzep's enterprise coverage and joint enterprise allegations without prejudice, with leave to amend to replead. *See id.* at 14.

Ecoquij-Tzep repleaded these allegations in his Third Amended Complaint. *See* Dkt. No. 84. Specifically, he alleges the following as to enterprise coverage:

13. Defendants' business activities involve those to which the Fair Labor Standards Act applies. The Defendants' business affected interstate commerce for the relevant time period because the materials and goods that Plaintiff and other employees handled and/or used on a constant and/or continual basis and/or that were supplied to Plaintiff and other employees by the Defendants to use on the job moved through interstate commerce prior to and/or subsequent to the employees' use of the same. Examples of the goods and materials regularly and routinely handled and/or used by Plaintiff and other employees of the Defendants many of which discovery will show travelled through interstate commerce are listed below in paragraph 16.

14. Upon information and belief, the Defendant Corporations had gross sales or business done, individually and/or collectively as part of the joint enterprise described in paragraph 17 below, in excess of $500,000 annually for the years 2012, 2013, 2014, and 2015.

15. Upon information and belief, the Defendant Corporations' sales or business done, individually and/or collectively as part of the joint enterprise described in paragraph 17 below, is expected to exceed $500,000 for the year 2016.

16. Furthermore, Defendants regularly employed two or more employees for the relevant time period who handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce, thus making Defendants' businesses an enterprise covered under the Fair Labor Standards Act. For example, Plaintiff and other employees of the Defendants regularly and routinely handled a variety of goods and materials many of which discovery will show travelled through interstate commerce, including but not limited to the following:
a) Noodles
b) Rice
c) Canned pineapple
d) Chicken
e) Egg rolls
f) Chile peppers
g) Honey mustard
h) Pork
i) Shrimp
j) Bell peppers
k) Orange chicken sauce
l) Beef
m) Carrots

n) Black pepper
o) Teriyaki sauce
p) Sweet and sour sauce
q) Chile sauce
r) Hot mustard sauce
s) Duck sauce (also known as plum sauce)
t) Tea (including green tea, mint tea, and black tea)
u) Bottled water
v) Orange juice
w) Horchata
x) Soft drinks including Sprite, Coca-Cola, Dr. Pepper, and
     Lemonade
y) Fruit punch
z) Dish soap
aa) Detergents
bb) Salt
cc) Sugar
dd) Paper plates
ee) "To-go" boxes
ff) Paper cups
gg) Straws
hh) Plastic lids
ii) Napkins
jj) Disposable gloves
kk) Hand soap
ll) Coolers or refrigerators, both for food storage and storage of
     beverages
mm) Freezer
nn) Stove and cooking range
oo) Deep fryer
pp) Receipt paper
qq) Cash register
rr) Credit card machine
ss) Pots
tt) Knives
uu) Pans
vv) Fry oil
ww) Hot sauce
xx) Chile oil
yy) Onions (white, yellow, and green)

*Id.* at 4-7.

As to joint enterprise, Ecoquij-Tzep alleges:

17.    Upon information and belief, Defendants GRAND FAST FOOD INC d/b/a FAMOUS CAJUN GRILL and also d/b/a FAMOUS WOK and LE ARLINGTON, INC. d/b/a MW HAWAIIAN GRILL also d/b/a MW'S HAWAIIAN GRILL also d/b/a LITTLE TOKYO and f/k/a SHUN FAR EL PASO are part of a joint enterprise as defined by 29 U.S.C. § 203(r) that also includes at least one other entity, Megatrend Food Management, Inc., as the related activities between the various businesses, performed through unified operation and/or common control, are being done for a common business purpose. These related activities are believed to include the operation of numerous restaurants under the MW Hawaiian Grill, Little Tokyo, and Famous Cajun Grill brands throughout the state of Texas in cities such as El Paso, Arlington, Grand Prairie, Houston, Spring, Humble, San Antonio, Dallas, College Station, Orange, Deer Park, Montgomery, Vidor, Pflugerville, McAllen, and Port Arthur among others. Defendants YING HUI WANG and KONG SHENG WANG appear as officers, directors, or managers for both of the Defendant Corporations and Defendant YING HUI WANG appears as the president of Megatrend Food Management, Inc. in the records of the Texas Secretary of State. At the Hawaiian Grill and Famous Cajun Grill restaurants where Plaintiff performed work, Defendant SHIZHONG ZHANG managed both restaurants. Those restaurants were located near each other in the same food court of the Parks at Arlington mall in Arlington, Texas and offered similar types of food. Those restaurants also regularly shared inventory if one restaurant ran low on particular items such as soft drinks and chicken. Those restaurants also intermingled funds by sharing extra change if one restaurant ran low. Plaintiff was also paid in cash for his work at both restaurants. The restaurants also used the same flatware and sold the same beverages. Defendant SHIZHONG ZHANG, in addition to managing both restaurants, also cooked at both restaurants when the usual cooks were either late or unable to come to work. Finally, Defendant SHIZHONG ZHANG also maintained at least two separate housing units, one apartment and one home, which were used to provide housing to employees like Plaintiff who worked at either the Hawaiian Grill or the Famous Cajun Grill restaurants at both of which Plaintiff worked.

*Id.* at 7-8.

## Legal Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory

statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

## Analysis

I.    <u>Ecoquij-Tzep has sufficiently alleged enterprise coverage.</u>

To establish a claim for either unpaid overtime or minimum wage compensation under the FLSA, Ecoquij-Tzep must prove that he was an "employee[] engaged 'in the production of goods for commerce' ('individual coverage') *or* 'employed in an enterprise engaged in commerce or in the production of goods for commerce' ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citing 29 U.S.C. § 207(a)(1)) (emphasis in original). "*Either* individual *or* enterprise coverage is enough to invoke FLSA protection." *Id.* (emphasis in original).

For purposes of establishing enterprise coverage, the FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as one that

> (A) (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

29 U.S.C. § 203(s)(1); *see also Lopez-Santiago v. Coconut Thai Grill*, No. 3:13-cv-4268-D, 2014 WL 840052, at *1-*2 (N.D. Tex. Mar. 4, 2014).

Enterprise coverage is an element of a claim rather than a jurisdictional prerequisite. *See Ecoquij-Tzep v. Le Arlington, Inc.*, No. 3:16-cv-625-BN, 2017 WL 4539430, at *3 (N.D. Tex. Oct. 11, 2017).

-13-

Defendants have challenged only the first prong of the enterprise coverage definition, which can be met in one of two ways: by satisfying the requirements of either (1) the "engaged in commerce" clause or (2) the "handling" clause.

The Court can analyze coverage under the "engaged in commerce" clause essentially in the same manner as it analyzes individual coverage, although the question as to individual coverage is whether Ecoquij-Tzep himself engaged in interstate commerce, whereas the question in an enterprise coverage analysis is whether any two or more of the business's employees engaged in interstate commerce. *See Mendoza v. Detail Solutions, LLC*, 911 F. Supp. 2d 433, 439 & n.4 (N.D. Tex. 2012).

The "handling clause" requires the Court to find that an employer had more than one employee "handling, selling, or otherwise working on" goods that have moved in interstate commerce. *See* 29 U.S.C. § 203(s)(1)(A)(i); *Mendoza*, 911 F. Supp. 2d at 441.

A side-by-side comparison of Ecoquij-Tzep's enterprise coverage allegations in his Second Amended Complaint and Third Amended Complaint is helpful:

| Second Amended Complaint: | Third Amended Complaint: |
|---|---|
| 13. Defendants' business activities involve those to which the Fair Labor Standards Act applies. The Defendants' business affected interstate commerce for the relevant time period because the materials and goods that Plaintiff and other employees handled and/or used on a constant and/or continual basis and/or that were supplied to Plaintiff and other employees by the Defendants to use on the job moved through interstate commerce prior to and/or subsequent to the employees' use of the same. .... | 13. Defendants' business activities involve those to which the Fair Labor Standards Act applies. The Defendants' business affected interstate commerce for the relevant time period because the materials and goods that Plaintiff and other employees handled and/or used on a constant and/or continual basis and/or that were supplied to Plaintiff and other employees by the Defendants to use on the job moved through interstate commerce prior to and/or subsequent to the employees' use of the same. Examples of the goods and materials regularly and routinely handled and/or used by Plaintiff and other employees of the Defendants many of which discovery will show travelled through interstate commerce are listed below in paragraph 16. .... |
| 16. Furthermore, Defendants regularly employed two or more employees for the relevant time period who handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce, thus making Defendants' businesses an enterprise covered under the Fair Labor Standards Act. | 16. Furthermore, Defendants regularly employed two or more employees for the relevant time period who handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce, thus making Defendants' businesses an enterprise covered under the Fair Labor Standards Act. For example, Plaintiff and other employees of the Defendants regularly and routinely handled a variety of goods and materials many of which discovery will show travelled through interstate commerce, including but not limited to the following.... |

Defendants assert that "Plaintiff's Complaint remains merely conclusory, with

the only 'facts' being an alleged shopping list of items presumably handled by the Defendant's." Dkt. No. 93-1 at 2.

The Court disagrees. The Third Amended Complaint includes the detailed allegations that the Court previously ruled were missing. *Compare* Dkt. No. 72 at 6-8.

The Court DENIES Defendants' Third MTD on this ground.

## II.  Ecoquij-Tzep has sufficiently alleged joint enterprise.

While an "enterprise" may consist of multiple entities, to be a "joint enterprise" for FLSA purposes, the entities must (1) perform related activities, (2) be under unified operation or common control, and (3) share a common business purpose. *See Dunlop v. Ashy*, 555 F.2d 1228, 1231 (5th Cir. 1977); 29 U.S.C. § 203®. The practical effect of Ecoquij-Tzep's joint enterprise allegations here is to permit the sales or business done by Le Arlington and Grand Fast Food to collectively reach the $500,000 thresholds required for FLSA coverage. *See* Dkt. No. 84 at 4-5 ("14. Upon information and belief, the Defendant Corporations had gross sales or business done, individually and/or collectively as part of the joint enterprise described in paragraph 17 below, in excess of $500,000 annually for the years 2012, 2013, 2014, and 2015. 15. Upon information and belief, the Defendant Corporations' sales or business done, individually and/or collectively as part of the joint enterprise described in paragraph 17 below, is expected to exceed $500,000 for the year 2016.").

Entities have a "common business purpose" when their activities "are directed to the same business objective or to similar objectives in which the group has an interest." 29 C.F.R. § 779.213. "A common business purpose exists if "the separate

[entities] engaged in complementary business, and were to a significant degree operationally interdependent." *Reich v. Bay, Inc.*, 23 F.3d 110, 115-16 (5th Cir. 1994) (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 530 (5th Cir. 1982)). This requires establishing "[m]ore than a common goal to make a profit." *Brennan v. Veterans Cleaning Servs., Inc.*, 482 F.2d 1362, 1367 (5th Cir. 1973). And, where "the activities are not performed as a part of such enterprise but for an entirely separate and unrelated business, they will be considered performed for a different business purpose and will not be a part of that enterprise." 29 C.F.R. § 779.213.

"'Activities are considered 'related' when they are 'the same or similar or when they are auxiliary or service activities such as warehousing, bookkeeping, purchasing, advertising, including, generally, all activities which are necessary to the operation and maintenance of the particular business.'" *Garza v. Deep Down, Inc.*, No. H-14-3184, 2015 WL 5883408, at *3 (S.D. Tex. Oct. 8, 2015) (quoting *Reich*, 23 F.3d at 114).

In assessing whether the requisite "common control" is present, the determinative question is whether a common entity has the power to control the related business operations. *See Donovan v. Easton Land and Dev., Inc.,* 723 F.2d 1549, 1552 (11th Cir. 1984) (citing *Shultz v. Mack Farland & Sons Roofing Co.,* 413 F.2d 1296, 1301 (5th Cir. 1969)). The test of common control is not ownership but rather whether there is a common control center with the ultimate power to make binding policy decisions for all units of the enterprise. *See Dunlop v. Ashy*, 555 F.2d 1228, 1231 (5th Cir. 1977).

A "unified operation" is defined as "combining, uniting, or organizing the

performance of related activities so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose." *Garza*, 2015 WL 5883408, at *3 (citing 29 C.F.R. § 779.217). The common business purpose requires more than a common goal to make a profit. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984).

In dismissing without prejudice Ecoquij-Tzep's previous joint enterprise allegations, the Court explained that, "[a]lthough Ecoquij-Tzep's alleges that he worked for two restaurants – Hawaiian Grill and Famous Cajun Grill – he does not allege any other facts showing how the two restaurants' activities are related other than that they 'shared management personnel'" and that "[t]he Court cannot, without more, reasonably infer that the activities of the two alleged employer restaurants were the same or similar"; that "Ecoquij-Tzep's allegations that the corporate defendants have common corporate officers is not sufficient to show that the individual defendants exercised common control over the corporate defendants" or "that the corporate defendants were under unified operation," which is defined as 'combining, uniting, or organizing the performance of related activities so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment'"; and that "[t]he common business purpose requires more than a common goal to make a profit," and "Ecoquij-Tzep alleges no facts to show that the activities of the corporate defendants were unified to accomplish a common business purpose." Dkt. No. 72 at 10-12.

Again, a side-by-side comparison of Ecoquij-Tzep's joint enterprise allegations

in his Second Amended Complaint and Third Amended Complaint is helpful:

| Second Amended Complaint: | Third Amended Complaint: |
|---|---|
| 17. Upon information and belief, Defendants GRAND FAST FOOD INC d/b/a FAMOUS CAJUN GRILL and also d/b/a FAMOUS WOK and LE ARLINGTON, INC. d/b/a MW HAWAIIAN GRILL also d/b/a MW'S HAWAIIAN GRILL also d/b/a LITTLE TOKYO and f/k/a SHUN FAR EL PASO are part of a joint enterprise as defined by 29 U.S.C. § 203® that also includes at least one other entity, Megatrend Food Management, Inc., as the related activities between the various businesses, performed through unified operation and/or common control, are being done for a common business purpose. These related activities are believed to include the operation of numerous restaurants under the MW Hawaiian Grill, Little Tokyo, and Famous Cajun Grill brands throughout the state of Texas in cities such as ... among others. Defendants YING HUI WANG and KONG SHENG WANG appear as officers, directors, or managers for both of the Defendant Corporations and Defendant YING HUI WANG appears as the president of Megatrend Food Management, Inc. in the records of the Texas Secretary of State. | 17. Upon information and belief, Defendants GRAND FAST FOOD INC d/b/a FAMOUS CAJUN GRILL and also d/b/a FAMOUS WOK and LE ARLINGTON, INC. d/b/a MW HAWAIIAN GRILL also d/b/a MW'S HAWAIIAN GRILL also d/b/a LITTLE TOKYO and f/k/a SHUN FAR EL PASO are part of a joint enterprise as defined by 29 U.S.C. § 203® that also includes at least one other entity, Megatrend Food Management, Inc., as the related activities between the various businesses, performed through unified operation and/or common control, are being done for a common business purpose. These related activities are believed to include the operation of numerous restaurants under the MW Hawaiian Grill, Little Tokyo, and Famous Cajun Grill brands throughout the state of Texas in cities such as ... among others. Defendants YING HUI WANG and KONG SHENG WANG appear as officers, directors, or managers for both of the Defendant Corporations and Defendant YING HUI WANG appears as the president of Megatrend Food Management, Inc. in the records of the Texas Secretary of State. |

Ecoquij-Tzep further alleged in the Third Amended Complaint that, "[a]t the Hawaiian Grill and Famous Cajun Grill restaurants where Plaintiff performed work, Defendant SHIZHONG ZHANG managed both restaurants. Those restaurants were located near

each other in the same food court of the Parks at Arlington mall in Arlington, Texas and offered similar types of food. Those restaurants also regularly shared inventory if one restaurant ran low on particular items such as soft drinks and chicken. Those restaurants also intermingled funds by sharing extra change if one restaurant ran low. Plaintiff was also paid in cash for his work at both restaurants. The restaurants also used the same flatware and sold the same beverages. Defendant SHIZHONG ZHANG, in addition to managing both restaurants, also cooked at both restaurants when the usual cooks were either late or unable to come to work. Finally, Defendant SHIZHONG ZHANG also maintained at least two separate housing units, one apartment and one home, which were used to provide housing to employees like Plaintiff who worked at either the Hawaiian Grill or the Famous Cajun Grill restaurants at both of which Plaintiff worked." Dkt. No. 84 at 7-8.

Defendants assert that Ecoquij-Tzep "has failed to sufficiently allege that the various defendants comprise a joint enterprise"; that Ecoquij-Tzep "again has made unsupported conclusory statements and has failed to show how the amongst the Defendants (1) who had authority to hire and fire the relevant employees; (2) who had authority to promulgate work rules and assignments and to set the workers' conditions of employment, (i.e. compensation, benefits, work schedules, and rates and method of payment); (3) how each of the Defendants were involved in day-to-day employee supervision and discipline; and, (4) actual control of employee records such as payroll, insurance, or taxes"; and that "[a]llegations regarding the use of the same flatware and the selling of the same beverages per se are insufficient to support a joint enterprise

claim." Dkt. No. 93-1 at 2.

The Court determines that, for essentially the reasons that Ecoquij-Tzep explains in response to the Third MTD, *see* Dkt. No. 116 at 6-9, Ecoquij-Tzep has alleged sufficient facts for pleading purposes to support a reasonable inference that Le Arlington and Grand Fast Food engaged in related activities; were a unified operation under common control; and shared a common business purpose while operating complementary restaurant businesses that were to a significant degree operationally interdependent. The allegations that Defendants assert are missing relate not to joint enterprise allegations but to the economic reality for joint employer status, *see, e.g.*, *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012), as to which the Court has already determined Ecoquij-Tzep's allegations are sufficiently pleaded.

The Court DENIES Defendants' Third MTD on this ground.

III.   <u>Ecoquij-Tzep otherwise sufficiently alleges FLSA overtime and wage violations.</u>

Defendants also argue that "[t]his suit was originally brought against Hawaiian Grill a/k/a MW Hawaiian Grill. However, the Plaintiff has not sufficiently alleged which entity he claimed to be his employer." Dkt. No. 93-1 at 2. But Ecoquij-Tzep has alleged that the named defendants are liable as joint employers under the FLSA. This argument is no basis for dismissal under Rule 12(b)(6).

Finally, in reply, Defendants point to evidence to attack many of Ecoquij-Tzep's allegations. *See* Dkt. No. 120 at 3-4. But, as Defendants themselves note, the Court "must not look beyond the pleadings when determining whether a complaint states a claim upon which relief may be granted." *Id.* at 3. And the Court will not consider

arguments raised for the first time in a reply in support of a motion to dismiss. *See Ecoquij-Tzep v. Hawaiian Grill*, No. 3:16-cv-625-BN, 2016 WL 8674569, at *2 (N.D. Tex. Dec. 16, 2016).

### Conclusion

For the reasons and to the extent explained above, the Court DENIES Defendants' Amended Third Motion to Dismiss [Dkt. No. 93].

SO ORDERED.

DATE: December 21, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE